Walter E. FISHER, Appellant,

v.

UNITED STATES of America,
Appellee.

Joseph E. LINDQUIST, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 17040, 17045.

United States Court of Appeals
Eighth Circuit.

Dec. 2, 1963.

Rehearing Denied Jan. 14, 1964.

John S. Connolly, Court appointed attorney, St. Paul, Minn., made argument and submitted typewritten briefs for the appellants.

Patrick J. Foley, Asst. U. S. Atty., Minneapolis, Minn., made argument for the appellee and Miles W. Lord, U. S. Atty., Minneapolis, Minn., was with him on the brief.

Before JOHNSEN, Chief Judge, MATTHES, Circuit Judge, and GIBSON, District Judge.

GIBSON, District Judge.

These appeals are from convictions of conspiracy to commit mail fraud entered against Walter E. Fisher and Joseph E. Lindquist in the United States District Court for the District of Minnesota. The convictions were entered pursuant to an indictment returned by the Grand Jury which alleged a violation of § 371, Title 18, U.S.C. charging that appellants conspired to commit mail fraud in violation of § 1341, Title 18, U.S.C.

The facts out of which the convictions arose are these. Frank J. Mee, who was convicted with the appellants and whose conviction was affirmed by this Court in Mee v. United States, 316 F.2d 467 (8th Cir. 1963), was the owner of a quonset hut in Anoka County, Minnesota. Mee took out a theft insurance policy on the contents of the quonset from Wolfgram Insurance Agency on or about November 4, 1958. The insurance carrier was the Ohio Casualty Company.

Two or three weeks later appellant Joseph E. Lindquist went to the Wolfgram Agency and took out a theft insurance policy covering such contents of the quonset hut as belonged to him. Lindquist at the time was renting the quonset from Frank Mee. The insurer on this policy was Iowa National Insurance Company.

On September 6, 1958, appellant Lindquist borrowed $150 from the Royal Finance Company in St. Paul, Minnesota, and the check for this loan was made out to appellant Walter E. Fisher.

On January 9, 1959, Officer Lundberg, a patrolman for the Anoka County Sheriff's Office, investigated a burglary at the quonset hut owned by Frank Mee. In the course of the investigation he spoke to appellant Lindquist who reported that several items had been stolen.

Claims of loss were made by Mee and appellant Lindquist for the items which allegedly were stolen, and these loss claims were sent through the mails to the insurance companies involved. Mee's claim was paid in the amount of $845.50, and Lindquist's claim was settled for $750.00.

On November 5, 1959, appellant Lindquist gave a statement to postal authorities which stated that the burglary was a fake, and that the burglary was committed by appellant Walter E. Fisher in furtherance of a scheme whereby Mee and Lindquist were to collect from their insurance companies on the fake burglary.

On November 10, 1959, Frank J. Mee gave a statement to postal authorities which stated that the burglary was a sham, and was done in order to collect on insurance, but that Mee did not know who had committed the burglary.

On December 8, 1959, postal inspectors Turner and Sable called at the home of appellant Walter E. Fisher, and requested Fisher to accompany them downtown. Fisher complied and they proceeded to the Post Office Building in St. Paul. After about an hour and a half the inspectors took Fisher to lunch, and then took him back to the Post Office. The subject matter of the conversation between Fisher and the inspectors was the alleged burglary of the quonset hut. After about three hours had elapsed since Fisher had left his home, but prior to having made any statement, Fisher was first informed that he had a right to have counsel present. It does not appear that Fisher was told that he was free to leave. After being informed of his right to counsel, Fisher made a statement. This statement set out that Fisher committed the fake burglary, and that he understood that insurance claims were to be made for the items alleged to have been taken. The statement also sets out that appellant Lindquist had taken out a loan for Fisher for $150 in September of 1958, and that after the burglary Fisher was told that he need not pay back the loan.

On December 15, 1959, patrolman Lundberg, with postal inspectors Turner and Sable, went to the quonset hut without a warrant. They received permission to search from the tenant and dug under a trash pit there. In the course of their diggings they discovered many of the items which were reported on the claims of loss of Mee and Lindquist. Testimony was to the effect that these items seemed to be wrapped in vinyl plastic, however the items were not introduced into evidence.

On September 18, 1961, arraignment was held, and appellants Fisher and Lindquist, along with Frank J. Mee, all entered a plea of not guilty to the charge of conspiracy to commit mail fraud.

On October 13, 1961, appellant Lindquist, who at that time was represented by employed counsel, made a statement at St. Paul, which substantially was the same as the one he had made earlier. Appellant Lindquist's counsel was not present at the time the statement was given, although it appears that Lindquist was informed of his right to have counsel present.

Prior to trial, appellant Fisher made a motion for a separate trial which was denied. Both appellants made motions for directed verdicts which were also denied. In the course of the trial Postal Inspector Sable was allegedy seen leaving the Courtroom in close proximity to one of the jurors, and it was alleged that he had his arm on the juror's shoulder and that he had a conversation with the juror. This incident was called to the attention of the trial judge by the prosecutor, and Postal Inspector Sable vigorously denied having had any conversation with a juror. At the trial, both Mee and Fisher testified, but Lindquist did not take the stand. The jury returned a verdict of guilty and sentence was imposed on February 2, 1962. Appellant Fisher received a sentence of one year and one day in confinement, Mee received the same sentence, and appellant Lindquist received a sentence of two years, with two months in confinement and the balance of the sentence suspended.

Appellant Fisher has raised seven points which he urges for reversal, and appellant Lindquist has raised four points. The points raised by Lindquist are the same as those raised by Fisher and they will be considered together for the purpose of this opinion.

778

■ The first point raised is that the statement given by appellant Fisher was the product of an illegal search and seizure. Fisher bases this allegation of error on the doctrine laid down in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and subsequent cases, particularly Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963). Apellant Fisher's position is that when he gave his statement to the postal inspectors he was under arrest, and that the arrest was an illegal arrest, since the inspectors had no warrant nor was there probable cause for his arrest. The Court does not quarrel with the premise that if the arrest were illegal then the statement would have been inadmissible under the fruit of the poisoned tree doctrine, however, the Court is not convinced that Fisher was under arrest at the time he made the statement. From the testimony adduced at the trial (Tr. 365, 479, 774) it would appear that Fisher went along voluntarily, and that he was free to leave at any time. "To constitute an arrest, there must be an actual or constructive seizure or detention of the person, performed with the intention to effect an arrest and so understood by the person detained." Jenkins v. United States, 161 F.2d 99, 101 (10th Cir. 1947), cited in Brinegar v. United States, 165 F.2d 512 (10th Cir. 1947), affirmed 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, rehearing denied 338 U.S. 839, 70 S.Ct. 31, 94 L.Ed. 513. The Court is therefore of the opinion that at the time Fisher made the statement that he was not under arrest, and that therefore the statement was not taken in violation of any Constitutional guarantees.

Fisher's second allegation of error is that even if the statement was not illegally obtained, still it was inadmissible because it was never sufficiently corroborated. Before discussing the sufficiency of the corroboration there seems to be some dispute as to whether or not Fisher's statement constituted a confession or an admission.

"A confession is an acknowledgement in express terms, by a party in a criminal case, of his guilt of the crime charged, while an admission is a statement by the accused, direct or implied, of facts pertinent to the issue, and tending, in connection with proof of other facts, to prove his guilt." 2 Wharton Criminal Evidence, § 337 (12th Edition.)

■ In the present case Fisher's statement does not fall easily into either category, but it would seem to be of little import whether the statement is treated as an admission or a confession. The statement sets out essentially (a) that Fisher knew that the fake burglary was part of a scheme whereby Mee and Lindquist were to make false insurance claims, (b) that Fisher committed the fake burglary, (c) the date of the burglary and a description of the damage to the quonset and contents, and (d) that Fisher received $50 for committing the burglary as well as being relieved of the obligation of paying back a loan of $150 procured for him by Lindquist. If the statement is treated as an admission, then it is necessary that it be connected with other facts to prove the guilt of the defendant. In the case at bar there is proof that both Mee and Lindquist took out insurance policies on the contents of the quonset, that a burglary was staged, that claims of loss were made, that the claims were paid, and that the mails were employed in the collection of the fraudulent claims. These items taken with the statement, treated as an admission, are sufficient to sustain a finding of guilty, and the independent facts buttress and corroborate the admission sufficiently so that there was no error if the statement is treated as an admission.

■ If the statement is treated as a confession, then there must be independent corroboration although to date it is not clear what quantum of corroboration is required or to what matters the corroboration must relate. In Opper v. United States, 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101 (1954), the Supreme Court stated:

" * * * we think the better rule to be that the corroborative evidence need not be sufficient, independent of the statements, to establish the *corpus delicti*. It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. Thus, the independent evidence serves a dual function. It tends to make the admission reliable, thus corroborating it while also establishing independently the other necessary elements of the offense. * * * It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth."

and in 2 Wharton, Criminal Evidence, § 394 (12th Edition) it states:

"Although the quantum of proof required has been variously stated by the different courts, it is generally held that the evidence other than the confession need not be sufficient to establish independently beyond a reasonable doubt the *corpus delicti*, or the defendant's guilt."

In the present case there was independent evidence that a burglary was committed at the quonset hut, that the condition of the interior of the quonset was rundown and that a television had been smashed and the walls written on. There was independent evidence that a loan of $150 had been taken out by Lindquist with the check drawn payable to Fisher, and that there had been claims made as a result of the burglary and that those claims had been paid. It had also been shown that the mails were used in furtherance of the insurance claims. Comparing this independent evidence with the statement of Fisher there is close agreement between all of the details contained therein and the facts adduced through independent evidence, e. g. the writing on the walls and the broken television set. The accord between the independent evidence is convincing to this Court of the trustworthiness of the con-

fession, and the independent evidence in conjunction with the confession is sufficient to establish the *corpus delicti* and appellant Fisher's connection with the offense.

Appellant Fisher relies heavily on the case of Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954), to show that there was not proper corroboration of the confession. In the Smith case the Supreme Court held that there must be independent evidence identifying the accused with the offense before the confession is sufficiently corroborated. The Smith case is a tax evasion case in which the *corpus delicti* is inseparably bound up with the identity of the defendant while in a conspiracy case the *corpus delicti* may be established without disclosure of the identity of the conspirator. For this reason the conspiracy situation is not covered by the Smith case, but falls into the line of cases characterized by Cutchlow v. United States, 301 F.2d 295, 297 (9th Cir. 1962), which cites with favor an annotation from 45 A.L.R.2d 1316 as follows:

"The courts agree that, as a general proposition, evidence in corroboration of a confession or admission need not connect the defendant with the crime charged and that such connection can be shown by his confession or admission without corroboration on that point."

■ The use of the mails to defraud the insurance companies in perpetrating a fraudulent and faked claim was proved beyond a reasonable doubt by independent evidence, the claims were made and paid and use of the mails in procuring insurance and in processing the claims was admitted. The *corpus delicti* was thereby proved. As stated in the Smith case (supra), l. c. 154 of 348 U.S., l. c. 198 of 75 S.Ct. 99 L.Ed. 192:

"Once the existence of the crime was established, however, the guilt of the accused could be based on his own otherwise uncorroborated confession."

Moreover, in this case there was corroboration of Fisher's statement in that the specific building broken into (quonset hut) was identified a "seemingly" burglary was committed on the premises in question and Fisher had visited Lindquist at the quonset hut prior to the alleged burglary. Some of the alleged fruits of the faked burglary were recovered secreted on the premises. In fact, Fisher's statement is entirely consistent with the independent facts adduced in this case and is complimentary to, and supports the essential parts of the offense charged. Fisher might not have been aware that he was involved in a conspiracy to commit a federal crime in using the mail to defraud, which is of no consequence, as he was consciously aware that he was involved in a conspiracy to commit a faked burglary, which burglary would be the basis of defrauding the insurance companies and that in the process of defrauding the mails would be used to perpetrate and execute such illegal operation. The Court, therefore, finds that there was no error in admitting Fisher's statement since there was sufficient independent evidence which established the trustworthiness of the statement, and which, when taken with the statement, proved the *corpus delicti* and linked appellant Fisher to the crime charged.

 Appellants Fisher and Lindquist both allege error in allowing reference by witnesses to Government's Exhibit #19, consisting of items dug up in a trash pit at the quonset, which were marked for identification, but were not introduced into evidence. Appellants' contention is that the exhibit is the product of an illegal search and seizure. The point is not well taken. At the time of the search which lead to the discovery of Exhibit #19 neither Fisher nor Lindquist was in any way connected with the premises on which the quonset hut was situated. Although the officers did not have a search warrant at the time of making the search, they did obtain permission to search from the tenant in possession, a Mrs. McCarthy. The Constitutional guaranty against unlawful searches and seizures is normally construed to be a protection to the person in possession or occupancy of the premises, and it does not seem to the Court that appellants Fisher and Lindquist are in any position to assert that Exhibit #19 was obtained in violation of their Constitutional rights. Since permission to search was obtained from the tenant in possession it is impossible that Exhibit 19 could have been the product of an illegal search and seizure as to these defendants, and it was not error to allow the exhibit to be marked and not introduced.

██ Both appellants next urge that the trial court erred in not granting their motions for a directed verdict on the basis that it was not shown that the mails were an essential part of the fraud perpetrated on the insurance companies. In determining whether or not the mails were an essential part of the scheme it is necessary to first look at the various mailings employed in furtherance of the scheme. First the mails were used to forward the applications for insurance from the Wolfgram Agency to the companies involved, to send the policies to Mee and Lindquist, to send the inventory of loss to the sheriff, to send the notice of theft loss to the companies, and to send the draft in settlement of the claim to Lindquist. It seems evident to the Court that the mails were of necessity an integral part of the plan. Certainly in dealing with insurance agents it would be contemplated that the mails would have to be employed in carrying on business with the different companies for whom the agent does business. As was stated in Blue v. United States, 138 F.2d 351, 361 (6th Cir. 1943), "It is enough to show that the mails were used and that the scheme was one which reasonably contemplated the use of the mails." There was no error in not granting appellants' motions for directed verdict as it must have been reasonably contemplated that the mails would be employed in furtherance of the scheme.

 Appellant Fisher alleges that the trial court abused its discretion in

not granting his motion for separate trial. It is well settled that the trial court has a wide range of discretion in the matter of granting separate trials, and that it must be affirmatively shown that prejudice resulted from the failure to grant a separate trial. Long v. United States, 160 F.2d 706 (10th Cir. 1947), United States v. Hanlin, 29 F.R.D. 481 (D.C.Mo.1962). The trial court was very careful in the present case in instructing the jury that the statements of each defendant could be used only as to that defendant, so that it does not appear that any prejudice resulted or has been shown. For that reason it was not error to deny appellant Fisher's motion for separate trial.

Appellants Fisher and Lindquist allege that the trial court violated the directive laid down in Remmer v. United States, 347 U.S. 227, 74 S.Ct. 450, 98 L. Ed. 654 (1954), in not holding a hearing on the question of contact between Postal Inspector Sable and one of the jurors. After consideration of the same contention in Mee v. United States, supra, we concluded that the incident complained of was not prejudicial to Mee. Having again reviewed the circumstances attending the occurrence complained of, we are not persuaded that a different result should be reached on these appeals.

The final point advanced by the appellants is that it was error to admit Government's Exhibit #24 into evidence. The basis for the alleged error is that the statement constituting Exhibit #24 was taken from appellant Lindquist without his counsel being present, after he had been arraigned, had pleaded not guilty, and had retained counsel. Apparently the appellants contend that this procedure deprived appellant Lindquist of his right to the effective assistance of counsel. Here Lindquist voluntarily called the postal inspectors and offered his statement, probably expecting consideration on his case. Although the practice is not one to be commended, there was no deprivation of counsel as Lindquist was advised of his right to have counsel present at the time the statement was made. The Court is of the opinion that the practice should be condemned for ethical reasons, but that the breach of ethics involved is not in the circumstances a sufficient basis on which to predicate reversal. It is further urged that the statement was prejudicial to appellant Fisher, but in light of the careful instructions given the jury by the trial judge, this contention is without merit.

In summary, the Record in this case definitely shows that the offenses charged herein against all three defendants of conspiring to use the mails to defraud was voluntarily disclosed by defendant Lindquist, who subsequently under date of November 9, 1959, gave a rather complete confession of the faked burglary and the defrauding of the insurance companies. This confession implicates all three defendants, only two of whom are on appeal in this case, the Mee appeal having previously been heard by this Court and affirmed in Mee v. United States, 316 F.2d 467 (8th Cir. 1963). Defendant Fisher, along with co-defendant Mee in the original case, gave written statements admitting their participation in the fraudulent scheme of defrauding the insurance companies. Defendant Lindquist did not take the stand but both defendants Fisher and Mee took the stand, and while admitting that each had signed the written statements or admissions claim such statements to be involuntary or psychologically imposed upon them against their will, thus, in effect repudiating the admissions or confessions. While it appears to the Court that this case may well have been left to the jurisdiction of the local authorities to prosecute on a fraud basis, the use of the mails was an essential part of the fraudulent scheme, although not the predominant feature of the illegal activity charged. However, since the federal government did assume jurisdiction and did prosecute under the charge of conspiracy to violate the mail fraud statute, this case must be considered on its merits as respects that statute alone. The record discloses a wide variance in the testi-

mony of the defendants who testified and the government witnesses, particularly inspector Sable, relating to the making and securing of the admissions or confessions. This conflict is irreconcilable and it is evident that some of the witnesses who were testifying have not testified to the truth. There is sufficient evidence in the record upon which defendants Lindquist and Fisher could have been found guilty by the jury beyond a reasonable doubt. The only factor that could overturn that apparent factual situation would be if the government witnesses and the government officials, including inspector Sable, were perjuring themselves and framing a case against the defendants. This does not appear probable. The pieces of the puzzle originally laid out at the outset of this charged offense have fitted together fairly well in the presentment of the case before the trial court, leaving the disputed items as a matter of the credibility of the witnesses. The trial court and the jury are necessarily in a much better position, having heard the testimony and observed the demeanor of the witnesses on the stand, to pass judgment upon that issue. The record shows the trial judge to have been very meticulous and extremely fair in according the defendants a full, complete and impartial trial. Defendant Lindquist is convicted by his own statement voluntarily disclosed and corroborated in its essential parts. Defendant Fisher is sufficiently brought into the conspiracy by his confession, which also was corroborated in its essential parts; he being too closely entangled or connected with the fraud to escape the web of testimony adduced by the government. Defendant Mee, (not here involved) who has an unlisted 'phone (R. 654), admitted receiving two telephone calls from a party who stated he was Fisher and "That he had done some work for Joe [Lindquist] and that Joe owed him some money for it and he wanted to collect it." R. 650. Lindquist, of course, knew Fisher and Mee told Lindquist about the call and that Fisher wanted him (Lindquist) to call him. Again on the second call of a party named Fisher to Mee, Mee testified that he told the calling party, allegedly Fisher, that he had told Joe (Lindquist) to call him and that he had relayed his first message and then Mee testified " * * * and if he didn't it wasn't my fault, and then this fellow said that Joe owed him some money for some work he had done and he wanted to get it, and that if he didn't get it he would put—how did he say that, that he would make, get Joe into more trouble than he ever thought was possible. * * * " R. 653. Although Mee later testified that the voice calling on the above stated calls was not that of defendant Fisher, it does not seem probable that the case could be so arranged as to frame Fisher. Left unexplained and damaging to Fisher is the admitted fact that Fisher had secured a loan of $150 with defendant Lindquist as accommodation maker and that Lindquist had repeatedly requested payment of the loan upon receiving past due notices from the loan company about six times prior to the alleged faked burglary and that after the alleged faked burglary no further demands were made upon Fisher to pay this loan, and Fisher admitted having never paid the loan nor heard any more about it. On the basis of the record, it appears that the defendants, Fisher and Lindquist, (they being the only defendants involved in this appeal) had a fair and impartial trial, and that the evidence adduced and admitted was sufficient upon which the jury, under the charge of the Court, could have rendered a verdict of guilty.

From all of the evidence there is sufficient evidence on which the jury could base a finding of guilty, and no prejudicial error was committed in the course of the trial.

The judgments appealed from are affirmed.