**UNITED STATES of America, Appellee,**

v.

**Barry CHAFFEN, Appellant.**

**No. 78–1230.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1978.

Decided Dec. 1, 1978.

---

George H. Bailey, Little Rock, Ark., for appellant.

Kenneth F. Stoll, Asst. U. S. Atty., Little Rock, Ark., for appellee; W. H. Dillahunty, U. S. Atty., Little Rock, Ark., on the brief.

Before HEANEY and STEPHENSON, Circuit Judges, and VanSICKLE, District Judge.*

VanSICKLE, District Judge.

Barry Chaffen appeals from a judgment of conviction for violation of Title 18 U.S.C. § 2113(a), bank robbery. Chaffen's conviction followed the denial of his motion to suppress all identification, oral or written statements, and all evidence taken from a search of his automobile. Trial to the court was had on the record of the motion to suppress. The issue on appeal goes to the trial court's denial of the motion to suppress. We affirm the judgment of conviction.[1]

On the afternoon of January 6, 1978, two Federal Bureau of Investigation agents were driving on an Arkansas State Highway en route to Mississippi County, Arkansas. At approximately 1:50 p. m., they heard a broadcast over the Arkansas State Police radio that there had been a bank robbery at Fisher, Arkansas. After hearing the broadcast, the agents proceeded towards Fisher and en route overheard supplemental broadcasts describing the robber as a lone black male, at least six feet tall, and driving a large gray automobile. One of the agents also overheard that the robber was slender, had a thin mustache, and was wearing glasses.

At about 2:15 p. m., when the agents were within thirty-five or forty miles of Fisher, they passed a single black male, wearing glasses, in a gray 1976 Oldsmobile 98 with a maroon top heading east, away

---

* Bruce M. VanSickle, United States District Judge, District of North Dakota, sitting by designation.

1. Barry Chaffen was 21 years of age and sentenced under the Youth Corrections Act (18 U.S.C. § 5005 et seq.).

from Fisher. The occupant of that car was Barry Chaffen. The agents turned around, pursued Chaffen for two to four miles, and flagged him down.

After the agents stopped Chaffen, they ordered him to raise his hands and get out of the car. The agents then identified themselves, frisked Chaffen for weapons, and checked his identification. Chaffen stated to the agents that he had come from Memphis earlier that day and had gone to Jonesboro to see a girl, the name of which he could not remember, and he was now returning to Memphis. The highway Chaffen was on was not a usual route from Jonesboro to Memphis and he explained to the agents that he had taken the wrong road out of Jonesboro.

At the request of the agents, Chaffen consented to a search of his car and trunk. This search produced nothing of a suspicious nature. The agents then advised Chaffen that a bank had been robbed at Fisher and the description of the robber fit him. Chaffen was then asked if he would return to Fisher with the agents. One of the agents said, "Well, now, we need you to go to the bank with us." Chaffen did not immediately consent so the agent said, "If you're not the one, it will only take about an hour and-a-half or so. It will only take two hours if you're not the one." Chaffen stated that he had just been discharged from the Air Force and had been a security policeman, and realized that the agents had a job to do and he agreed to go back to Fisher. Although Chaffen consented to return to Fisher, he explained at the hearing that he felt he was being compelled to go. One agent confirmed this, testifying that Chaffen would not have been allowed a refusal. Although Chaffen was not handcuffed, he was informed that he would not be allowed to escape.

Upon arrival at the bank in Fisher, Chaffen remained outside and two bank tellers were asked to view him through the window. When the tellers were unable to make an identification by observing Chaffen through the window, he was taken inside the bank and told to stand in front of the teller's window. Neither of the tellers could make a positive identification at that time.

The agents, joined by another F.B.I. agent, led Chaffen to a back room in the bank where they inquired further into the matter. Chaffen asserts that he was told that he had been identified as the bank robber and that the cap worn in the robbery had been found in his car. Chaffen signed a consent to search form for the search of his car and the third agent left the room to conduct this search.

It was at this time that Chaffen was advised of his rights, but he refused to sign a waiver of rights form. After the agents gave Chaffen some friendly advice that "he was a young man. If he had made a mistake that it wasn't the end of the world . . . that any statement he made and any cooperation on his part would be made known to the United States Attorney's office," Chaffen signed a waiver of rights form and made a statement confessing to the bank robbery.

Meanwhile, the search of Chaffen's car produced articles of clothing like those described as being worn by the robber and the stolen money. This money was hidden under the dashboard of the car.

After the confession, Chaffen was advised that he was under arrest and was taken to Harrisburg, Arkansas where a lineup was held. The other participants in the lineup were noticeably shorter than Chaffen and Chaffen was not represented by counsel. Although several witnesses viewed this lineup, only the two tellers that viewed him at the bank were able to make identifications.

The next day, January 7, 1978, a complaint was filed and a warrant was issued. Chaffen was then brought before a Magistrate.

■ Chaffen acknowledges that the initial stop and temporary detention on the highway for the purpose of investigating the robbery was lawful. Chaffen also agrees that the agents were justified in searching his car in that he gave his consent

to a search of the interior and trunk portions of the car. Chaffen contends, however, that an effectual arrest took place when he was requested to accompany the agents to Fisher. He further contends that the arrest was unlawful because the totality of the agents knowledge at the time would not have supported a judicial determination of probable cause to arrest. He maintains that this unlawful arrest was violative of his rights to be protected from unlawful search and seizure, to have the advice of counsel, and to be protected from being forced to testify against himself.

We hold that Judge Eisele's finding that an arrest had not in fact taken place when Chaffen accompanied the agents to Fisher in that Chaffen had voluntarily returned to Fisher was not clearly erroneous.

Although Chaffen consented to return to Fisher, he contends that the consent was not totally voluntary. He testified that he felt he had no choice in whether or not he would accompany the agents to Fisher and that he was not told he had a choice. The trial court did not agree and found that Chaffen had voluntarily returned to Fisher with the agents. The trial court, in reaching this conclusion, stated as follows:

> . . . he took the initiative in this conversation of protesting his innocence and his willingness to cooperate. He said, "I was in the Air Force. I was in security work. I understand what you are doing and I want to cooperate. Here, search my car, search me. Anything." Now this wasn't just something where he was reacting to any threat or coercion. It was in effect, I think, a ploy. He had hoped that he could brazen it through and this would be to his advantage. They wouldn't find anything and they would let him go. I think he planned that right down to the hilt. I think that was his approach to the problem. I think he did cooperate, and I think he did it, not out of any concern for his welfare or authority of the officers; but he might just carry the day. They might be impressed with this whole picture of this young man and his reaction and let him go. So, when

they wanted him to go to Fisher he has testified that he didn't want to go, and I think probably he did not want to go, but the way he describes Mr. Cunningham putting it to him is contrary to my concept of an arrest or he has control of the defendant. Mr. Cunningham is saying to him; "Why don't you come down to Fisher. It will only take an hour or hour and a half and if you are not the one you will be back in your car in an hour and a half." That's not the language of a man who's got a man in custody. Get in your car and go. We don't have to reason with you, or explain, or try to get your consent. Everything indicated Mr. Chaffen was trying to operate on a voluntary basis at that particular point.

We agree with Judge Eisele. The entire picture of Chaffen's conduct suggests that his cooperation was an attempt to allay the suspicions of the agents. The scheme backfired, however, when the officers reacted in the common sense manner mirrored by Shakespeare when he had Hamlet's mother comment, after watching a play that her son had arranged, "The lady doth protest too much methinks."

The situation was not that of a hypothetical innocent who would have reasonably believed he was under arrest. Instead, it is that of one who had not yet been detained with the intention of effecting an arrest. As recited in *Fisher v. United States*, 324 F.2d 775, 778 (8th Cir. 1963), citing *Jenkins v. United States*, 161 F.2d 99, 101 (10th Cir. 1947):

> "To constitute an arrest, there must be an actual or constructive seizure or detention of the person, performed with the intention to effect an arrest and so understood by the person detained."

Had Chaffen not volunteered, he probably would have been arrested. As one agent testified, Chaffen would not have been allowed to refuse to return to Fisher. This, however, was not the case. Chaffen volunteered to return. He effectively talked himself into trouble.

At no time after volunteering to return to Fisher did Chaffen withdraw his consent.

From the time Chaffen got into the agents' car until he signed his confession, he never once asked to be returned to his car and allowed to continue on his way. Chaffen voluntarily submitted to the attempted identification at the bank, he consented once again to a search of his car, he signed a waiver of rights form, and he made a statement confessing to the bank robbery. Chaffen was cooperative to the end. Thus, the evidence obtained by the agents was not obtained as a product of a wrongful arrest because there was no arrest until after Chaffen had confessed. Since there was no arrest involved, it is unnecessary to deal with the probable cause argument. The trial judge's order denying suppression is sustained.

It is difficult to understand the lineup as it was executed in this case. Certainly the lineup accentuated the height factor in identification. But the lineup identification was hardly a determinative factor in the outcome of the case. The evidence of the physical description of Chaffen, the physical description of the car, the finding of the money and clothes, and Chaffen's statement admitting the robbery was so overwhelming that a lineup was hardly necessary. This lineup was at the best inept and at the worst a sharp practice. However, as Judge Gibson pointed out in *Fisher, supra* :

> . . . the breach of ethics involved is not in the circumstances a sufficient basis on which to predicate reversal. *Id.* at 781.

The judgment of the District Court is affirmed.