**Jimmie FIELDING, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 13723.**

United States Court of Appeals District of Columbia Circuit.

Argued June 19, 1957.

Decided Dec. 23, 1957.

Mr. William B. Bryant (appointed by the District Court), Washington, D. C., with whom Messrs. William C. Gardner and Joseph C. Waddy, Washington, D. C., were on the brief, for appellant.

Mr. John W. Kern, III, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., Lewis Carroll and Arthur J. McLaughlin, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, WASHINGTON and DANAHER, Circuit Judges.

BAZELON, Circuit Judge.

Appellant shot and killed his wife's uncle on February 5, 1954. He was arrested the same day and was indicted for first degree murder a month later. Two

months after his arrest and a month after his indictment, the District Court ordered a mental examination. Dr. Ettore de Filippis, a Government psychiatrist, examined appellant at the District of Columbia jail on April 9, and April 24, 1954, and found him suffering from dementia praecox. There followed a hearing under 18 U.S.C. § 4244 and an adjudication that appellant was mentally incompetent to be tried. Appellant was admitted to St. Elizabeths Hospital on May 10, 1954, and remained there under treatment for almost two and one-half years. On October 17, 1956, after a certification by the hospital superintendent that he had recovered his competency, the District Court adjudicated him to be competent to stand trial.

When he was finally brought to trial, in December of 1956, appellant did not deny the shooting but raised the defense of insanity. After the jury returned a verdict of guilty of second degree murder, appellant moved for judgment of acquittal by reason of insanity notwithstanding the verdict. The District Court denied the motion and imposed a sentence of twelve years to life. The denial of that motion is the ground of this appeal.

The District Court concluded, in a long opinion, (a) that it lacks the authority to grant such a motion and (b) that, if it has the authority, this motion was without merit.[1] We think that opinion is erroneous on both points.

The conclusion that there is no authority to direct a judgment of acquittal by reason of insanity notwithstanding

a jury verdict of guilty is clearly erroneous. Douglas v. United States, 1956, 99 U.S.App.D.C. 232, 234–35, 239 F.2d 52, 54–55; see also Wright v. United States, 102 U.S.App.D.C. ——, 250 F.2d 4. The motion should have been granted, because the Government had failed to sustain its burden of proving beyond a reasonable doubt that the shooting was not the product of appellant's mental illness.

The showing of insanity made by appellant rested principally on the testimony of three Government psychiatrists: Dr. de Filippis, who had examined him in April of 1954 in connection with the determination of his competency to stand trial, and Drs. Cushard and Epstein, of St. Elizabeths Hospital, who had examined him at the hospital on numerous occasions, beginning with his admission on May 10, 1954. Dr. de Filippis, who made two brief examinations at the jail, testified that appellant was then suffering from dementia praecox, but that he had no opinion as to appellant's mental condition at the time of the shooting. The other two doctors testified that, on the basis of their examination of appellant under hospital conditions over a long period, it was their opinion that he was suffering from schizophrenia (another name for dementia praecox), that he had been suffering from that illness at the time of the shooting, and that the shooting was the product of the illness. Dr. Cushard added that, in his opinion, appellant had been unable to distinguish right from wrong at the time of the shooting or to refrain from the wrong or adhere to the right.[2]

---

1. United States v. Fielding, D.C.D.C.1957, 148 F.Supp. 46, 56.

2. This psychiatric testimony was supplemented by appellant's own testimony and that of his sister. Appellant testified that for some time before the shooting, he had heard voices screaming that they were going to kill him; that the voices were accompanied by terrible pains in his head; that his stomach felt as if snakes were crawling in it; and that the reason he carried a gun with him when he drove to the District of Columbia from Jersey City on February 4,

1954, was his fear of the voices. Appellant's sister, who, like him, lived in Jersey City, testified that she had seen him as often as three times a week; that he had frequently complained to her about his headaches and the feeling in his stomach. She related some "silly" behavior on his part. She also testified that he would not eat at her home because he said she was trying to poison him and that he had told her that his wife was trying to "run him out of his mind." Asked whether she concluded he was of sound mind or unsound mind,

The Government offered no psychiatric evidence to prove appellant's sanity. It sought to refute his showing of insanity by the testimony of the police officers who arrested and questioned him and the testimony of his brother and wife.

The police officers testified that appellant seemed to them "rational," "coherent," "perfectly normal," and "of sound mind." Appellant's brother, who lived in a different city from appellant and "wasn't around him too much," testified that, when he saw appellant a few hours before the shooting, he acted "normal," but "like he was afraid; you know, how a kid would be a little afraid he was going to get a whipping." Pressed by Government counsel for an opinion as to whether his brother was "of sound or unsound mind" when he saw him, the witness said: "Well, I want to be fair and square. I haven't been around people of unsound mind. I wouldn't know whether he was * * * or not." Appellant's wife, called by the Government, testified on direct that based on her observation of her husband he was not "unsound" at the time of the crime. But the record shows she had been separated from appellant for several months until spending the night of February 3, 1954, with him at their apartment in Jersey City. On cross-examination, she testified that, when they went to bed that night, appellant "had three glasses under the bed. One at the head, one at the foot and one in the middle of the bed. Now, what that for, I don't know." She also corroborated appellant's own testimony that he had long suffered from such severe headaches that, on one occasion, she called an ambulance.

■ All of the lay testimony offered by the Government taken together was not sufficiently probative, in the face of the strong showing of insanity made by the defense, to permit reasonable jurymen to conclude beyond a reasonable doubt that appellant was sane at the time of the shooting. What we have said elsewhere about an opinion of sanity expressed by an untrained lay witness having no prolonged and intimate contact with the accused [3] disposes of the testimony of the policemen in this case. The conclusions of normalcy and soundness of mind expressed by appellant's brother and wife, stand not much higher than those of the policemen. Both were out of touch with appellant for a considerable time until just before the shooting and neither professed to have any training or experience in the judgment of sanity. Moreover, their actual observations, upon which their opinions must rest, were hardly consistent with conclusions of normalcy or soundness of mind. What we said in Douglas v. United States, 99 U.S. App.D.C. at page 239, 239 F.2d at page 59, applies here:

"True, there was non-expert testimony. But this * * * cut both ways, at least as deeply in the direction of insanity as of sanity. Our judicial conclusion that as a factual matter a reasonable doubt was created by the disinterested medical testimony, coupled with the adjudication of unsoundness of mind and the hospitalization for eighteen months [here twenty-nine months], is not changed by the lay witnesses * * *."

■■ We therefore reverse the judgment of conviction. We said in Douglas [4] that our conclusion that the Government has failed to prove sanity beyond a reasonable doubt does not necessarily require us to direct that a judgment of acquittal by reason of insanity be entered

---

she said he was "sick." As to whether his sickness was physical or mental, she said, "* * * * I am not experienced with either one of those kind of things * * *." She said she knew "something" was wrong with him "because he didn't act right * * *." She added that after her brother had been committed to "the insanity," she saw some

insane people and "he acted like an insane person."

3. Wright v. United States, 102 U.S.App. D.C. ——, 250 F.2d 4; Carter v. United States, 102 U.S.App.D.C. ——, 252 F.2d 608.

4. 99 U.S.App.D.C. at page 240, 239 F.2d at page C0.

Since Douglas we have had occasion to observe that there may be "deficiencies in the process by which we collect the evidence upon which cases like this turn"; [5] that the psychiatric examinations upon which the expert witnesses' testimony is based may be "inadequate in that they do not gather enough information to pin-point the origin of [the] illness"; [6] that "the facts required by way of psychiatric testimony are a " 'description and explanation of the origin, development and manifestations of the alleged disease \* \* \* how it occurred, developed, and affected the mental and emotional processes of the defendant \* \* \*,' " and that "the examinations conducted by the psychiatrists must be of a character they deem sufficient for the purpose of determining the facts required." [7] If the Government feels that it can produce evidence on the issue of appellant's sanity at the time of the shooting which it could not produce or thought it unnecessary to produce at the last trial,[8] we think here, as in Wright, that the Government should have that opportunity. We therefore remand the case to the District Court "with instructions to grant a new trial if the Government shall request it; or, absent such request, to enter a judgment of acquittal

by reason of insanity notwithstanding the verdict." Wright v. United States, supra note 3. If a new trial is held, of course, it will be limited to second degree murder or lesser degrees of homicide. Green v. United States, 78 S.Ct. 221.

So ordered.

DANAHER, Circuit Judge (dissenting).

Appellant here moved for judgment of acquittal by reason of insanity notwithstanding the verdict. The trial judge ruled that the motion should be denied on the merits.[1] Here, the majority is substituting its judgment for that of the trier who saw and heard the witnesses and was in the best possible position to appraise the evidence and the weight to be accorded to it. His review[2] of the case to my mind conveys complete conviction that the question was properly left to the decision of the jury.[3] I understand that a jury is not bound to credit the opinions of psychiatrists but rather is free to accept or reject their testimony, just as it may do as to the testimony of any other witness.

There is no suggestion that there was error in the conduct of the trial, and I would affirm on the merits.

---

5. Wright v. United States, supra note 3.

6. Blunt v. United States, 1957, 100 U.S. App.D.C. 266, 244 F.2d 355, 364, note 23.

7. Williams v. United States, 101 U.S.App. D.C. ——, 250 F.2d 19, quoting Carter v. United States, supra note 3.

8. Appellant's trial was held only shortly after our Douglas decision and before the more recent decisions referred to in the text in which we discussed the nature of the Government's burden when a defense of insanity may reasonably be anticipated or is properly raised.

1. He also concluded that he lacked authority to grant the motion. To the extent that Wright v. United States, 1957, 101 U.S.App.D.C. ——, 250 F.2d 4, can be said to announce a different rule,

I there joined in the dissent. Insofar as Douglas v. United States, 1956, 99 U.S. App.D.C. 232, 239 F.2d 52, can be said to have application, the opinion declared that "Each case must be decided upon its own facts." 99 U.S.App.D.C. at page 239, 239 F.2d at page 59. It was also pointed out that directing a verdict of not guilty by reason of insanity is "a duty to be performed with caution \* \* \* because of the deference due to the jury in resolving factual issues." 99 U.S.App. D.C. at page 237, 239 F.2d at page 57.

2. See Judge Holtzoff's excellent opinion in United States v. Fielding, D.C.D.C. 1957, 148 F.Supp. 46.

3. Cf. Bradley v. United States, 1957, 102 U.S.App.D.C. ——, 249 F.2d 922.