Alvin F. BARKLEY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17206.

United States Court of Appeals District of Columbia Circuit.

Argued May 20, 1963.

Decided June 13, 1963.

Petition for Rehearing En Banc Denied Oct. 31, 1963.

Petition for Rehearing by the Division Denied Oct. 31, 1963.

Mr. William F. Reed, Washington, D. C., with whom Mr. Robert B. Hirsch, Washington, D. C. (both appointed by this court) was on the brief, for appellant.

Mr. Gerald A. Messerman, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Tim Murphy, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and BURGER and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge.

Appellant was indicted for first degree murder in consequence of the slaying of his wife, was convicted by a jury of the lesser included offense of second degree murder, and was sentenced to ten to thirty years imprisonment.

The trial involved no issue with respect to whether appellant committed the act charged. Counsel for appellant, in his opening statement, made this crystal clear. He said: "At this point I want to make clear to you one thing, that there is no question as to whether or not Mr. Barkley, the defendant, was involved in this affair [the shooting of the wife]. * * * In brief, ladies and gentlemen of the jury, the defense in this case is insanity." [1]

1. This statement, in our view, disposes of one issue raised on this appeal. It is claimed here, as it was at the trial, that the introduction of a written statement, taken from appellant while he was in police custody but prior to preliminary hearing, was prejudicial error requiring reversal. Mallory v. United States, 354

■ The central issue urged upon us is that, upon the evidence adduced by both prosecution and defense with respect to appellant's sanity at the time of the slaying, the government's burden of proving sanity beyond a reasonable doubt was not sustained, and that it was error for the trial court to have permitted the jury to determine the issue. As part of this contention, it is asserted that lay witnesses should under no circumstances be permitted to testify as to sanity; and that, if they are, careful instructions should be given with respect to the weight to be given such testimony.

At the trial the defense offered two expert, and one lay, witnesses on the sanity issue. One psychiatrist testified that, on the basis of her examination of appellant, it was her opinion that he had been suffering from mental disease at the time of the crime, and that, if so, the latter had probably been caused by such disease. The other psychiatrist stated that he had no evidence to establish that appellant had been mentally ill at the time of the crime, and that his opinion was that the mental illness found to exist four months after the crime was "very largely a reaction to the enormous emotional impact of what had happened." The lay witness was appellant's sister who had lived with him for several years up to a time about a year before the crime and who testified to her personal observation of several strange and bizarre acts on appellant's part, suggesting mental or emotional instability.

The government brought forward ten lay witnesses. Four were policemen who had observed appellant shortly after the crime and who stated that they saw nothing unusual about his demeanor. Two were men who had been fellow employees of appellant for a few months immediately preceding the killing. They testified that they had seen nothing about appellant's appearance or conduct to suggest irrationality. A seventh witness was a fellow-employe of appellant's wife who had seen him frequently over a period of years and who had noticed nothing strange. The last three witnesses were appellant's inlaws—his wife's parents and her brother. Because of their relationship, they had had occasion to see appellant frequently in the years before the crime, and they, too, testified that they had seen nothing in appellant's manner or conduct to suggest any mental disturbance.

■ Assuming proper instructions, we are of the view that, on this record, it was proper for the court to allow the jury to pass upon the sanity question, and that there is no occasion for us to disturb the jury's decision to reject the sanity defense. Lay testimony with respect to sanity has long been admissible in this jurisdiction,[2] and we see no occasion to depart from that rule in this case. Appellant himself has relied upon it heavily in the testimony of his sister. In McDonald v. United States, 114 U.S. App.D.C. 120, 312 F.2d 847 (1962), we said that "The jury must determine for

U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). Whatever might have been the case if appellant's guilt or innocence, in the sense of whether he caused the death of his wife, were in issue, the fact is that it was not; and the statement was not introduced as proof of its contents but only as bearing upon the insanity defense in that it was asserted to be evidence of appellant's rationality contemporaneously with the shooting. Cf. Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), and Tate v. United States, 109 U.S.App.D.C. 13, 283 F.2d 377 (1960). Regarded in this light, the role it could have played in the jury's deliberations on the sanity issue was, at

most, a rigorously limited one, inasmuch as it was only one of many items of evidence relating to the rationality of appellant's conduct at or shortly after the commission of the crime. Whatever the propriety of its admission under the facts of this case, its weight on the sanity question was only cumulative in character; and error in its admission, if any, was harmless in nature, not warranting reversal under any view of the matter.

2. Turner v. American Security & Trust Co., 213 U.S. 257, 29 S.Ct. 420, 53 L. Ed. 788 (1909), affirming 29 App.D.C. 460; and See Carter v. United States, 102 U.S.App.D.C. 227, 252 F.2d 608 (1957).

itself, from all the testimony, lay and expert * * * " the issues raised by the insanity defense. We did not say, of course, that there are no cases where a directed verdict of acquittal may not be warranted, as evidenced by our citation in McDonald of Isaac v. United States, 109 U.S.App.D.C. 34, 284 F.2d 168 (1960). But where, as here, there is evidence of substance looking both ways, the matter is for resolution by the jury. In Hawkins v. United States, 114 U.S. App.D.C. 44, 310 F.2d 849 (1962), we sustained submission to the jury when the Government put in no evidence on the sanity issue and the expert testimony advanced by the defense was "meager." It thus appears all the more proper here —where considerable evidence was adduced on both sides—to regard the question as safely within the jury's province.[3]

Our only concern here is with the matter of instructions. Early in the trial the court expressly asked counsel for both sides to submit requested instructions before the trial ended in order that the court might study them. After the taking of evidence was ended, and before the closing arguments, the court announced its purpose to give an instruction on expert testimony. At that point *only* government counsel spoke up to inquire whether the court also proposed to give an instruction on lay testimony. The court responded to this by saying: "I am just going to leave it up to the jury and let them make up their mind whether or not the lay witnesses have sufficient knowledge of the defendant. I have no particular instructions. If you want it in an instruction you should have prepared it, I think." Although this invitation was addressed to government counsel who had made the inquiry, defense counsel obviously could have availed himself of it. But no instruction was requested by the defense, nor

was objection made to the failure to give one. The court did give the usual instruction to the effect that the jurors were to consider the credibility of all the witnesses and to give the testimony of each such weight as they might deem appropriate under all the circumstances, but no specific reference was made to the lay character of the testimony on the sanity issue.

■ We believe it to be desirable— and essential when requested—for the court to allude expressly in its instructions to lay testimony relating to sanity. There are at least two important—and related—sets of considerations for the jury to have in mind in weighing such testimony. One involves the degree of opportunity possessed by the witness to observe the defendant: the length and intimacy of their acquaintanceship, the nearness or remoteness of the observation in point of time to the commission of the offense, and all such matters related to the depth or shallowness of the observational experience reported. The other has to do with the affirmative or negative nature of the observation, i. e., were extraordinary or bizarre acts suggesting abnormality performed by the defendant, or was his conduct simply free of such indicia? Mental disease differs in its susceptibility to detection by sheer observation in the normal course of human relationships, especially by laymen who have not had an extended opportunity for observance. We have indicated heretofore the importance of these distinctions, and it is appropriate that the jury's attention be expressly drawn to them. See Carter v. United States, supra note 2, where we said: "Also obvious upon a moment's reflection is the fact that, while a lay witness's observation of abnormal acts by an accused may be of great value as evidence, a statement that the witness never observed an abnormal

---

3. We do not have here the situation where the only lay testimony introduced by the prosecution is that of the policemen who observed the defendant at and immediately succeeding the arrest. Compare Wright v. United States, 102 U.S.App. D.C. 36, 250 F.2d 4 (1957), and Fielding v. United States, 102 U.S.App.D.C. 167, 251 F.2d 878 (1957).

act on the part of the accused is of value if, but only if, the witness had prolonged and intimate contact with the accused."

█ Because of the large amount of lay testimony involved in this trial, this would have been an appropriate case for the court to have given a cautionary instruction on lay testimony. But the fact remains that no request for such an instruction was made as contemplated by Rule 30 of the Federal Rules of Criminal Procedure. Bearing this in mind, and also the circumstance that the court did instruct on credibility generally in terms which the jurors could have related to the sanity issue, we find no plain error warranting reversal. Rule 52(b), Fed.R. Crim.P. Accordingly, the judgment of conviction is

Affirmed.