IN RE INTEREST OF KENNY EUGENE AND RANDY ALAN HITT, CHILDREN UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. JOY DELLA HITT, APPELLANT.

312 N.W.2d 297

Filed November 6, 1981. No. 44122.

Roger R. Holthaus for appellant.

Donald L. Knowles, Douglas County Attorney, and

Francis T. Belsky for appellee.

Barbara L. Hosford, guardian ad litem.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C.J.

Joy Della Hitt (mother), the natural mother of Kenny Eugene Hitt and Randy Alan Hitt, appeals from an order entered by the separate juvenile court of Douglas County, Nebraska, terminating her parental rights to her minor children. She assigns as error the fact that the trial court erred in ruling that the remarriage of short duration by appellant to the natural father of the children, who had been previously denied visitation rights with his children and whose parental rights were subsequently terminated, caused the children to come within the meaning of Neb. Rev. Stat. § 43-209(2) (Reissue 1978) in that the mother has substantially and continuously or repeatedly neglected the children and refused to give them necessary parental care and protection. We agree with the position tendered by the mother and reverse the action of the separate juvenile court.

An order of the juvenile court terminating the parental rights under § 43-209 must be based on clear and convincing evidence or it must be reversed. See, *In re Interest of Kimsey*, 208 Neb. 193, 302 N.W.2d 707 (1981); *In re Interest of Hiatt*, ante p. 195, 307 N.W.2d 108 (1981).

Furthermore, the right of parents to maintain custody of their child is a natural right, subject only to the paramount interests which the public has in the protection of the rights of a child. See *In re Interest of Kimsey, supra.* A court of this state may not properly deprive a parent of the custody of a minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship or has forfeited that right. *In re Interest of D., ante* p. 529,

308 N.W.2d 729 (1981).

Unfortunately, as is too often the situation in cases of this type, the in-court testimony by live witnesses is relatively scant. The bulk of the evidence was based on conclusionary letters from various agencies, which were not subject to cross-examination. We have previously indicated that if this court is to be able to examine the record de novo in order to determine that the evidence justifying the termination of parental rights is clear and convincing, something more than informal reports must be offered in evidence. Nevertheless, the evidence in this case, such as it is, is virtually without dispute.

Based upon our examination of the record, we are unable to conclude that either the best interests of the children require that the mother's parental rights be terminated or that the evidence to support that position is clear and convincing.

The evidence discloses that the mother was, for some 5 years prior to April of 1980, a chronic alcoholic. For a period of several months in 1978 and 1979, after the mother was divorced from the father, the father, by arrangement with the mother, had custody of the minor children. It was, in part at least, during that time, while the minor children were with the father, that the father committed a series of sexual assaults upon the children which ultimately resulted in the court terminating his parental rights to the children and sentencing him to the penitentiary for sexual assault on the children. On appeal to this court, the action in sentencing the father to the penitentiary was affirmed. See *State v. Hitt,* 207 Neb. 746, 301 N.W.2d 96 (1981).

Initially, a petition and motion seeking temporary custody of the children were filed by the county attorney against both the father and the mother alleging the father's abuse and the mother's failure to protect the children. A hearing on the petition seeking temporary custody was held on April 18, 1979,

and temporary custody was placed in the county. However, the mother was granted reasonable rights of visitation with the children, which she regularly exercised. A further hearing on the petition was held on November 5, 1979. Following that hearing the court, on December 27, 1979, found that grounds existed to terminate the parental rights of the father but not the mother. The court found that events which occurred prior to November 5, 1979, were insufficient to terminate the mother's parental rights, though sufficient to find that the children were neglected and dependent. The court continued jurisdiction over the children and granted the mother continuing rights of visitation. On February 15, 1979, the court entered an order terminating the father's parental rights. During all of this time, the mother was granted rights of visitation with the children, which she exercised at least in part.

The record further reflects that on January 11, 1980, while the mother was in the midst of a drinking bout, she remarried her former husband. It is unclear whether she ever lived with him following the remarriage. However, at no time during the entire brief remarriage were the children living with the mother or exposed to the father.

Nevertheless, based solely upon the fact that the mother had remarried, the county attorney filed a petition to terminate the parental rights of the mother. Apparently, the action of the county attorney was not without effect. Upon learning of the action taken by the county attorney, the mother set about once and for all to attempt to rehabilitate herself. Sometime in April of 1980 she had herself admitted to the Cherokee Mental Health Institute to begin treatment for her alcoholism. There she remained and was rehabilitated.

A hearing on the motion to terminate was held on July 31, 1980. At that time the county attorney offered in evidence the marriage certificate, and rested.

At the disposition hearing on August 25, 1980, the

State offered several written reports. The State's first exhibit was a report dated August 12, 1980, and signed by Dr. Beverly Mead, consulting psychiatrist. The report was solely with regard to Kenny and provided in part: "While it is not our custom to make recommendations, but to instead present only facts as they are documented in our files, it is felt that this particular case warrants special consideration due to Ken's strong feelings and ties to his mother. Therefore, the staff at Saratoga 01, in consultation with Dr. Mead, make the following recommendations which should be considered as a unit or package:

"One: Ken should be placed in foster care as soon as a suitable placement can be found.

"Two: It is felt that for the above reasons Ken's mother should retain visitation rights as allowed by the laws of Nebraska and the normal procedures of the foster care program."

Exhibit 2 was a letter signed by Mr. Todd J. Bruett, coordinator, Child & Family Psychiatry Services. Among the recommendations was the following: "That both boys, if possible, be allowed to maintain some type of contact with their biological mother. Kenny's attachment to his mother appears to be stronger than Randy's but both would profit should Mrs. Hitt continue to progress."

Exhibit 3 was a report signed by Michael J. Meredith, Douglas County Social Services. While the report recommends termination of the mother's parental rights, there is little factual basis upon which the determination is based. The report concludes by saying: "Despite Mrs. Hitt's current improvement I seriously doubt the family can ever be successfully reunited. The seperation [sic] of over 16 months is the primary reason for this. The vast improvement shown by both boys, especially Randy, indicates that it would be in their best interests to terminate their mother's parental rights."

Exhibit 4 was a letter from Nebraska Children's

Home Society to the court concerning Randy. It made no recommendation concerning the mother's parental rights.

The mother also testified at the hearing that she realized the problem that she had previously had with alcohol and admitted that she was indeed an alcoholic. She further testified, however, that she had made significant strides with regard to her drinking and that she believed she did in fact now have it under control. She stated that she had strong and adverse feelings toward her former husband and that if he appeared she would call the police and have him arrested. Her testimony was supported by Nancy Zimbra, social worker for Cherokee Mental Health Institute.

Based upon this meager record, the court entered an order terminating her parental rights. As we have previously indicated, we believe that the evidence simply will not support the action of the trial court. If the record reflects anything, it reflects that at the time the court determined to terminate the parental rights, the mother had made a substantial and important improvement in both her own physical condition and her relationship with the children. The mere fact that the mother, in a moment of intoxication, foolishly remarried the father, absent any other evidence indicating that the father was thereby given the opportunity to have access to the children, does not justify finding the mother unfit nor justify terminating her parental rights. Quite to the contrary, the evidence is somewhat encouraging that the mother has indeed attempted to put her life together and, with continued care from others, can indeed become a real mother to the children. The State should afford her the opportunity to do so.

It appears to us that at the very moment the mother has finally shown some strength regarding her own life and the life of her children, she is rejected by the court. The record does not seem to justify such action. If the

mother can continue in the future as she has in the immediate past, there is no reason to believe that she will not be an adequate mother to her minor children.

The evidence, at the present time, does not, however, indicate that the mother is able to assume all the responsibility for the care and maintenance of her minor children. It would therefore appear to be appropriate that her parental rights be restored, but that the county retain temporary custody of the children and keep them in foster care. A program should be developed, however, whereby visitation and contact between the mother and her two minor children are permitted whenever possible, to the end that, through aid of the county, the mother can have permanent custody of her children once again in the not-too-distant future. The order of the separate juvenile court terminating the parental rights of the mother is reversed and the matter is remanded to the separate juvenile court with directions to develop a program whereby the mother may exercise broad visitation rights with the minor children and may attempt, at the earliest possible moment, to regain permanent custody of her minor children. Should such efforts prove unsuccessful, the county has sufficient authority to take necessary and appropriate action at that time.

REVERSED AND REMANDED WITH DIRECTIONS.