IN RE INTEREST OF M., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. C.M., APPELLANT.
338 N.W.2d 764

Filed September 30, 1983. No. 82-787.

Dennis R. Keefe, Lancaster County Public Defender, and Mariclare Thomas, for appellant.

Michael G. Heavican, Lancaster County Attorney, and Mary L. Thramer, for appellee.

Paul Conley, guardian ad litem.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

This is an appeal from a judgment entered by the separate juvenile court of Lancaster County, Nebraska, terminating parental rights to two children. In an effort to protect the children we will refer to the parties by their initials rather than their names. The appellant in this case, the mother, will be referred to as "C.M." C.M. and her estranged spouse, F.M., are the parents of two minor children. The older child, J.A.M., was born August 19, 1980, and the younger child, B.L.A.M., was born August 31, 1981. The record in this case discloses a continuous struggle by the separate juvenile court to effect a reasonable solution, short of termination of parental rights. However, that effort, unfortunately, was without success. From the record, we are left with no other choice than to affirm.

On October 24, 1980, a petition was filed by the State of Nebraska in the interest of J.A.M. The petition alleged that J.A.M. was a child as defined by Neb. Rev. Stat. § 43-202(1) and (2) (Reissue 1978). Hearings on the petition were held on November 18 and December 3, 1980. On December 3, 1980, C.M. and her husband, in open court, admitted the allegations of the petition. The court found the allegations of the petition to be true and set forth its specific findings in a court order entered December 3, 1980. The court specifically found that J.A.M. was a child

as defined by § 43-202, and committed the temporary legal custody of the child to the Lancaster County Division of Public Welfare, with physical placement in the parents' home subject to certain conditions imposed by the court.

A further dispositional hearing on the petition was held by the separate juvenile court on December 18, 1980. As a result of that hearing, the court continued the legal custody of J.A.M. with the Lancaster County Division of Public Welfare and physical custody with the parents. On December 24, 1980, the Lancaster County Division of Public Welfare petitioned the court for a review of its order entered on December 18, 1980. The court specifically found that the child had been removed from the parental home with the consent of C.M. and her spouse and was placed in foster care. Further, the court specifically found that C.M. had subsequently reversed her position and requested that the child be returned to her care. The court held that J.A.M. should remain in foster care until a further hearing could be held on the disposition in the case.

On December 30, 1980, the separate juvenile court made specific findings as to the continued neglect of J.A.M. by C.M. and her spouse. The child was found to have sustained a burn on her left ankle, a burn on her right ankle, a burn on her cheek, and a bruise on her abdomen. The court also found that the parents of the child were experiencing severe marital problems and that the unstable home caused the child to be neglected. The court therefore entered an order placing legal and physical custody of J.A.M. with the Lancaster County Division of Public Welfare. The court further directed the parents to correct the conditions of neglect and to submit to the court a plan which was to include involvement in parental counseling and parent training.

On January 13, 1981, the court reviewed its prior order. The court directed that the legal custody of the minor child continue with the Lancaster County

Division of Public Welfare, and authorized child placement with the parents when conditions of neglect were remedied. The court further directed that the parents be involved in therapy counseling sessions with a child psychologist and to continue to maintain the marriage stability.

On April 17, 1981, the court held a further review of its earlier dispositional order. The court found that the conditions of neglect had not been corrected and that the child should remain in the legal and physical custody of the Lancaster County Division of Public Welfare. The court specifically set out a plan and conditions that had to be met by the parents prior to the child being returned to their care.

Following a hearing on May 21, 1981, the trial court found that conditions had sufficiently improved so that the minor child could be returned, subject to supervision, to her parents' home. However, on July 6, 1981, the State filed a notification of emergency removal of the child from the parental placement, and requested a review hearing to be held on whether the child should be returned to the parental home. On July 13, 1981, the court held such a hearing. The court directed that the legal custody of the child remain with the Lancaster County Division of Public Welfare but that the physical care of the child should be returned immediately to the parents, subject to conditions set forth in its order dated May 21, 1981. Further, the court ordered that the parents not argue in front of the child and that the child be enrolled in a day care program.

On September 24, 1981, the State advised the court that J.A.M. had again been taken into protective custody after being hospitalized with severe diaper rash. A supplemental petition was filed the next day alleging that both J.A.M. and her younger sister, B.L.A.M., were children as defined by § 43-202(2) and requesting the court hold a hearing and enter an appropriate order. On September 30, 1981, C.M. entered a denial to the supplemental peti-

tion. The trial court found that B.L.A.M. was not in immediate danger if she should remain with her parents, provided her parents would permit personnel from Child Protective Services, the homemaker and parent aide, as well as the public health nurse, to visit the child at any time. The parents were agreeable to that condition and B.L.A.M. was returned to the parents. The older child, J.A.M., however, continued in foster care placement.

On October 12, 1981, a hearing was held on the supplemental petition. The juvenile court found that the allegations of the supplemental petition were true, and directed that both children be placed in foster care because C.M.'s husband was incarcerated in the city jail and that on the night preceding the October 12 hearing C.M. had stayed out all night in her car with B.L.A.M. The court specifically determined that the lack of care by C.M. and her spouse showed that it would be unsafe for the children to remain with their mother. A further dispositional hearing was held on the supplemental petition on October 20, 1981. The court continued the temporary legal and physical custody of both children with the Lancaster County Division of Public Welfare for care and placement in a foster home. The court further directed that the parents correct the conditions of neglect, obtain mental status evaluations, participate in the Parent and Children Together program, and demonstrate the ability to budget their money and provide for the necessaries of life for their children and for themselves.

Between November 6, 1981, and January 15, 1982, the court granted several opportunities to C.M. to have one or both of the children with her upon meeting certain conditions, including having adequate food on hand. These conditions were not met and the visitations did not occur. Further hearings were held, and each time the court made every reasonable effort to grant the parents rights of visitation,

subject to their meeting reasonable conditions. Few, if any, of the conditions were met.

On May 13, 1982, the State filed a second supplemental petition. Trial was held on the second supplemental petition on September 20 and 21, and October 12 and 14, 1982. On September 20, 1982, the father voluntarily relinquished his parental rights and did not participate any further in the court proceedings. On November 2, 1982, the separate juvenile court of Lancaster County, Nebraska, entered an order adjudicating the children as being neglected children as defined by § 43-202(2), and terminated the parental rights of C.M. The children were committed to the legal custody of the state Department of Public Welfare for adoption.

C.M. has now appealed, maintaining that the trial court erred in terminating her parental rights, because (1) the evidence did not clearly and convincingly support the termination of parental rights; (2) it was not in the best interests of the children that the parental rights be terminated; (3) the trial court considered hearsay evidence in terminating C.M.'s parental rights; and (4) the trial court erred in not granting a continuance to permit C.M. to produce a witness in surrebuttal.

As always, the law in cases of this nature is clear; only the application of the facts is in dispute. With regard to the law, we have said that an order terminating parental rights must be based upon clear and convincing evidence. See *In re Interest of Hill*, 207 Neb. 233, 298 N.W.2d 143 (1980). Further, we have said that the right of parents to maintain custody of their child is a natural right, subject only to the paramount interests which the public has in the protection of the rights of a child. See *In re Interest of Hitt*, 209 Neb. 900, 312 N.W.2d 297 (1981). Parental rights cannot be terminated simply because others may be in a position to be better providers for the children. *In re Interest of D.*, 209 Neb. 529, 308 N.W.2d 729 (1981). And, finally, we have observed

that termination of parental rights should indeed be a last resort, and should be implemented only when no other reasonable alternative exists. *In re Interest of Brungardt*, 211 Neb. 519, 319 N.W.2d 109 (1982). However, we further observed in *In re Interest of Brungardt, supra* at 527, 319 N.W.2d at 114, that " 'when natural parents cannot rehabilitate themselves within a reasonable time . . . the best interests of the child or children require that a final disposition be made without delay.' ''

Little purpose would be served in detailing all of the evidence in this case. Suffice it to say that the trial court was more than patient and afforded C.M. every reasonable opportunity to rehabilitate herself and to provide her children with a minimal home. She simply was unable to accomplish that objective. The evidence is replete with instances of child abuse, both physically and emotionally. C.M. simply failed to display any understanding of the role of a mother and what was required of her in raising these children. She did not provide them with adequate food; she could not keep them clean; she could not generally care for them. In short, the record overwhelmingly establishes by clear and convincing evidence that the best interests of the children demanded the action taken by the trial court. We have observed before that where there are reasonable grounds to believe that the conditions giving rise to the parent's inability to care for her children will continue for a prolonged and indeterminate period, the parental rights may be terminated when such action is in the best interests of the children. See *In re Interest of Wanek*, 212 Neb. 394, 322 N.W.2d 803 (1982). Termination in this case was the last resort and the only alternative available to the court. C.M.'s contention that that determination was not based on clear and convincing evidence is simply without merit and must be overruled.

Likewise, C.M.'s claim that the trial court erred in admitting hearsay evidence is without merit. Spe-

cifically, the evidence objected to by C.M. was testimony given by a rebuttal witness. The witness attributed a statement to C.M.'s husband to the effect that he and C.M. were back together again. C.M. had claimed that all of her problems with the children stemmed from her relationship with her husband and that now that they were no longer together she could take care of the children. The statement in question was made on October 5, 1982, after the husband had supposedly filed for a divorce. The statement was made to the witness in the presence of C.M., who agreed, at the time, stating, "Everything is going perfect." The witness further observed that the husband had his arm around C.M., and the witness described C.M. as "snuggled up" against him. On surrebuttal C.M. denied that her husband had made such a statement and that she had agreed to it. Nevertheless, the testimony was proper for the trial court to consider. Specifically, Neb. Rev. Stat. § 27-801(4) (Reissue 1979) provides in part: "A statement is not hearsay if: . . . (b) The statement is offered against a party and is . . . (ii) a statement of which he has manifested his adoption or belief in its truth." Where the party against whom a statement is offered is present, hears the statement being made, and makes no objection, the trial court may consider such evidence as an exception to the hearsay rule. See, *Naples v. United States*, 344 F.2d 508 (D.C. Cir. 1964); *United States v. Fortes*, 619 F.2d 108 (1st Cir. 1980). This assignment is likewise without merit.

The last error raised by C.M. requiring our attention is that the trial court erred in not granting a continuance so as to permit her to call a surrebuttal witness. That assignment is likewise without merit. A motion for continuance is addressed to the sound discretion of the court, and in the absence of a showing of an abuse of discretion, a ruling on a motion for a continuance will not be disturbed on appeal. See *Vlcek v. Sutton*, 201 Neb. 555, 270 N.W.2d

906 (1978). C.M. wished to call her husband to deny that he had made the statement in the presence of the earlier witness. There is no showing in the record that if the spouse had been called he would in fact have denied the statement. There is simply no showing of an abuse of discretion in this case which would justify our reversing the action of the trial court.

For these reasons, therefore, the judgment of the trial court terminating the parental rights is affirmed.

AFFIRMED.